Greg S. Ericksen (1002)
Attorney at Law
1065 South 500 West
P.O. Box 609
Bountiful, UT  84011
Telephone:  (801) 299-5519
Facsimile:  (801) 299-9799

Mark M. Bettilyon (4798)
Liesel B. Stevens (10431)
RAY QUINNEY & NEBEKER PC
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543

*Attorneys for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ORBIT IRRIGATION PRODUCTS, INC., a Utah Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> SUNHILLS INTERNATIONAL, LLC, a California limited liability company; and DOES 1-10, <br><br> Defendants. | **THIRD AMENDED COMPLAINT** <br><br> Consolidated Case No. 1:10-cv-00113 DB <br><br> Honorable Robert J. Shelby |
| ORBIT IRRIGATION PRODUCTS, INC., a Utah Corporation, <br><br> Plaintiff, <br><br> vs. | [Case No. 1:11-cv-0012-DB] |

| | |
|---|---|
| ZHEJIANG HONGCHEN IRRIGATION EQUIPMENT CO., LTD, a Chinese corporation; TAIZHOU DONGFANG LIGHT DECORATIONS CO., LTD., a Chinese company, LUO JUN, an individual; JANICE CAPENER, an individual; DAN CAPENER, an individual; SUNHILLS INTERNATIONAL, LLC., a California limited liability company; RONG PENG, an individual; and JOHN DOES 1-10,<br><br>Defendants. | |

Plaintiff ORBIT IRRIGATION PRODUCTS, INC. ("Orbit"), brings this action against

DEFENDANTS ZHEJIANG HONGCHEN IRRIGATION EQUIPMENT CO., LTD., LUO

JUN, JANICE CAPENER, DAN CAPENER, SUNHILLS INTERNATIONAL, LLC., TIM

MIKA, RONG PENG and JOHN DOES 1 – 10.

## THE PARTIES

1.       Orbit designs, manufactures and distributes sprinkler and irrigation products to

various customers around the world with its principal place of operation at 845 North Overland

Road, North Salt Lake, Davis County, State of Utah. Orbit and its predecessor companies have

been in business for over 40 years.  During that time, Orbit has put in place the infrastructure and

resources needed to service retailers across the world, including large chain stores such as

Walmart, Home Depot and Lowes.  Orbit has also built up significant brand recognition and has

developed a reputation for innovation and excellence.

2.       Zhejiang Hongchen Irrigation Equipment Co., Ltd. ("Hongchen"), is a company

that purports to manufacture sprinkler and irrigation components in China.  Hongchen is also

sometimes called HCi.

3.      On information and belief, Luo Jun owns the majority of shares of Hongchen and controls and manages Hongchen, acting as its Vice General Manager.

4.      On information and belief, Luo Jun was at all times an agent, owner and/or employee of Hongchen, acting within the scope of such agency or employment.

5.      On information and belief, Luo Jun is a citizen of China.

6.      Janice Capener and Dan Capener are former residents of Davis County, State of Utah.  Orbit is informed and believes Dan Capener currently resides in China and Janice Capener currently resides in Utah.  Both are former employees of Orbit.  Janice Capener has used a variety of aliases and false names including KJ Peng, Megan Luo and Megan at HCi.

7.      On information and belief, Sunhills International, LLC ("Sunhills") was created in the State of California on approximately November 30, 2009, for the purpose of selling and distributing consumer lawn and garden equipment and products to various wholesale and retail outlets in the United States.  On information and belief, Sunhills' principle place of business is located in San Diego, California.

8.      On information and belief, Sunhills conducts and has conducted business in the Judicial District of Utah.

9.      On information and belief, Janice Capener and  Luo Jun are officers, directors, members, managers, agents and/or employees of Sunhills

10.     Rong Peng is a friend and associate of Janice Capener and on information and belief Rong Peng is also an officer, director, member, manager, agent and/or employee of Sunhills.

11.     On information and belief, Dan Capener is also an officer, director, member, manager, agent and/or employee of Sunhills.

12.     On information and belief Janice Capener has acted as a principle or employee of Hongchen under the assumed name of "Megan" or "Megan Luo" and has claimed to be Luo Jun's cousin.

13.     On information and belief Luo Jun and Janice Capener are business partners and both have acted on behalf of Hongchen and on behalf of Sunhills, as owners, employees or agents.

14.     On information and belief Tim Mika is an agent of Hongchen and has also acted as an agent of Janice Capener and Luo Jun.

15.     On information and belief, Taizhou Dongfang Light Decoration Co. ("Dongfang") is a sister company or company related to Hongchen.

16.     On information and belief, various Defendants have conspired together to harm Orbit and its business interests.

17.     On information and belief, Advocate Media Group Inc. and Charlie Crump have also acted as agents of Sunhills.

18.     On information and belief, John Does 1 -10 are other parties who have been given access to Orbit trade secrets or otherwise engaged in the conspiracy and unlawful acts described herein.

## JURISDICTION AND VENUE

19.     This is an action for patent infringement arising under the provisions of the Patent Laws of the United States of America, Title 35 of the United States Code.

20.     This is an action for trademark and trade dress infringement and false advertising arising under the provisions of the Lanham Act, Title 15, Chapter 22 of the United States Code.

21.     This is also an action for violation of Utah's Trade Secret Act, Utah's Truth in Advertising Act, unfair competition and conspiracy.

22.     Subject-matter jurisdiction over Orbit's claims is conferred upon this Court by 28 U.S.C. §§ 1331, 1332, and 1338(a).

23.     On information and belief, Defendants have contracted to provide goods in the State of Utah, solicited business in the State of Utah, transacted business within the State of Utah, conspired with residents of the State of Utah, committed tortious acts causing injury in the State of Utah and attempted to derive financial benefit from residents of the State of Utah, including benefits directly related to the claims and causes of action set forth herein.

24.     On information and belief, Defendants have placed their infringing products into the stream of commerce and/or advertised or offered to sell their products, throughout the United States, which products have been offered for sale, sold and/or used in the State of Utah and/or in the District of Utah.

25.     Defendants have committed acts of infringement in this judicial district, are subject to personal jurisdiction in this judicial district, and/or are doing business in this judicial district.

26.     Defendants have caused tortious injury in this state with intent to harm ORBIT in this state.

27.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and/or 1400.

## GENERAL ALLEGATIONS

*Orbit's Intellectual Property*

28.     Orbit owns U.S. Patent No. 6,874,696 (the "'696 Patent") entitled "Adjustable Sprinkler Riser with Offset Joint," owns U.S. Patent No. 6,619,570 (the "570 Patent") entitled "Telescoping Watering Wand," owns U.S. Patent No. 6,109,546 entitled "Lawn Sprinkler and bearing therefore" (the "'546 Patent"), owns U.S. Design Patent No. D495,026 (the "'026 Patent") entitled "Hose Nozzle," owns U.S. Design Patent No. D422,682 (the "'682 Patent") entitled "Water Spray Gun Handle," owns U.S. Design Patent No. D399,916 (the "916 Patent") entitled "Misting Apparatus."  The aforementioned patents are referred to herein as the "Patents."

29.     Orbit is also the original innovator and designer of several other irrigation-related products and the originator of certain trademarks, trade dress and logos.  Among others Orbit owns the trademark rights to "ORBIT" and the Orbit logo.  These rights are enumerated in several Trademark Registrations, including Trademark Registration No. 2,568,783 and Trademark Registration No. 2,819,521.  Orbit also has rights in the trademark "HARD TOP" with Trademark Registration No. 2,575,043.  Orbit also has rights in the trademark COBRA MISTAND, with Registration No. 2,218,418.  Orbit also possesses rights in the trademark FLEX COBRA, with Registration No. 4,078,877 and rights in SUNMATE, with Registration No. 2,389,054.

6

30.     Orbit has also sold sprinkler and irrigation products which have a distinctive look and feel, which consumers and customers of Orbit have come to associate with Orbit.  Orbit has further used distinctive brands, logos and packaging in connection with its sales of sprinkler and irrigation products.  Orbit has also used distinctive coloring and distinctive product presentations in catalogs, in trade magazines, on the internet and in retail establishments across the country. Consumers and customers have come to associate these trademarks and this trade dress with Orbit.

*Conspiracy*

31.     In approximately the Spring of 2010, Sunhills started to promote and advertise the availability of sprinkler and irrigation products to customers of Orbit.

32.     At the time these activities commenced, Sunhills was aided by Janice Capener, Luo Jon, Hongchen, Dan Capener, Rong Peng, Charlie Crump and Advocate Media Group Inc.

33.     Orbit is further informed and believes that other currently unknown parties, including potentially other competitors of Orbit, also participated in the conspiracy.

34.     Hereinafter those participating in the conspiracy, including but not limited to Luo Jun, Janice Capener, Dan Capener, Sunhills, Rong Peng, Charlie Crump, Tim Mika and other parties not yet known to Orbit shall be referred to as the "Conspirators" and the actions undertaken by the Conspirators to harm Orbit shall be referred to as the "Conspiracy."

*Defendants' Misrepresentations*

35.     Commencing in the Spring of 2010, Conspirators began a campaign to disparage Orbit and its goods and services.

36. The purpose of this promotional campaign was to convince retailers that Sunhills could provide the same goods and services presently provided by Orbit, but at cheaper prices.

37. In their effort to gain market share at Orbit's expense, Defendants have also attempted to misappropriate Orbit's patents, trade dress, trademarks and business practices.

38. Among other things, Defendants began sending promotional materials to Orbit customers, which provided the misleading impression that Defendant Sunhills alone, or in conjunction with Hongchen, manufactured all of Orbit's goods in China. In these communications, Defendants provided the misleading impression that the co-conspirators were the originators of all of Orbit's products, trade dress and inventive concepts and that Orbit was only a middleman or a "trading company."

39. These statements were misleading because neither Sunhills nor Hongchen has ever manufactured or sold any products to Orbit. In fact, the only relationship that existed between Orbit and the Defendants was that Hongchen's sister company Dongfang, had historically manufactured a few of the products that Orbit has sold to its retail customers in the United States.

40. In order to induce retail customers in the United States to purchase products from Sunhills, Conspirators also induced Dongfang to breach its contractual obligations with Orbit by inducing Dongfang to raise its prices to Orbit so that the prices offered by Conspirators would appear lower, in comparison.

41. In order to hide her identity from Orbit, Janice Capener also used a series of false names and front companies.

8

42.     For example, Janice Capener claimed she was "KJ Peng" in communications and meetings she had with retailers.

43.     Later, when Orbit detected Janice Capener's use of this name, she began going by the name of "Megan" or "Megan Luo" and disguised her activities by claiming to act on behalf of Hongchen.

44.     Orbit is informed and believes, however, that Janice Capener continued to act on her own behalf and on behalf of Sunhills, even when pretending to be an agent of Hongchen.

45.     Janice Capener also continued to damage Orbit and continued to act as part of the conspiracy which included her husband, Dan Capener, company Sunhills, Rong Peng, Charlie Crump, Advocate Media Group Inc. and others who these co-conspirators promoted to act on their behalf.

46.     When approaching customers, Conspirators disparaged Orbit and its products by informing customers that they could sell them the exact same product which Orbit sold to them at substantially discounted prices, even though Conspirators did not actually manufacture or sell any of the products which Orbit sold to these retailers and even though Conspirators offered to sell Orbit customers products which Hongchen did not manufacture.

47.     In making these statements to retailers, these Defendants also engaged in a series of actions which were harmful to Orbit, including using photographs of actual Orbit products in their promotional materials even though these products had not been manufactured or sold by the co-conspirators.

48.     These Defendants also purchased Orbit products at retail establishments and then passed these products off as their own products.  In some instances, Conspirators scraped Orbit's

trademarks off of Orbit products or removed Orbit's trademarks from photographs of Orbit products to provide the misleading impression that Conspirators had manufactured these products, when in fact they had not.

49.     In doing so, Conspirators repeatedly provided Orbit customers with Orbit trade dress, after having removed Orbit's trademarks in an effort to mislead customers into believing these products had originated from factories owned by the Conspirators in China.  In many of these instances, Conspirators offered products to Orbit customers which were the subject of Orbit patents, thereby further misappropriating Orbit's rights and disparaging Orbit by providing the misleading impression that the innovations covered by Orbit's products originated with Conspirators.

50.     Conspirators have also further disparaged Orbit's patents, as they noted in email communications to each other that Orbit's patents were "stupid patents" and noted their plans to further disparage Orbit by putting "OSOSO" on products, which apparently stood for "Orbit Stinks."

51.     In the course of promoting itself with Orbit customers, Conspirators further disparaged Orbit by making misleading statements regarding Orbit products, such that Orbit products had pin-hole leaks or were otherwise defective.

52.     Conspirators also attempted to misappropriate ideas for new products from Orbit and presented Orbit ideas for products to Orbit customers before Orbit had an opportunity to do so.

*Violation of Non-Compete Agreement*

53.　　In early 2010 Janice Capener inquired as to whether Orbit would let her out of her obligations including but not limited to her non-compete agreement with Orbit.

54.　　On or about February 24, 2010, Orbit advised Janice Capener in no uncertain terms by written letter that it would not let her out of her obligations including a non-compete agreement.

55.　　Thereafter Janice Capener continued to breach her covenants with Orbit by concealing her identity, affiliation with SUNHILLS, and her continued contacts with Orbit's factories, suppliers, customers, employees, third party factories and incidental suppliers.

*Janice Capener's Violation of a TRO Issued in Related State Court Action*

56.　　On July 13, 2010, the Second District Court for the State of Utah in Davis County issued a Temporary Restraining Order (TRO) against Janice Capener, which enjoined her from competing against Orbit.

57.　　Janice Capener received a copy of the TRO on July 15, 2010, while she and Charlie Crump were in China visiting Hongchen, which intended to manufacture the products Sunhills planned to sell in the United States.

58.　　With full knowledge of the TRO, Janice Capener and Sunhills continued to prepare for and attend meetings scheduled with Orbit's customers.  Thereafter, Janice Capener used aliases in her communications with Home Depot and other Orbit customers.

59.　　Orbit is informed and believes that Janice Capener has, almost continuously violated the TRO and preliminary injunction and has done so using various aliases,  including use of the names "KJ Peng" and "Megan."

*False Claims in Asia*

60.     In furtherance of the Conspiracy and again in an effort to harm Orbit by reducing the number of suppliers willing to work for Orbit, Conspirators have engaged in a systematic effort to inform suppliers in China of false facts concerning Orbit, including false facts concerning Orbit's credit worthiness and its ability to pay debts when due.

61.     Among other things, Orbit is informed and believes that the Conspirators have told other suppliers in China that Orbit breaches its agreements and fails to pay its obligations when due.  Orbit suppliers and the principals of ORBIT suppliers have also been threatened with harm, if they conduct business with Orbit.

62.     In addition, Orbit is informed and believes that the Conspirators have also informed others in China that the Conspirators have the ability to influence government officials in China and will prevent and preclude products which are being manufactured from Orbit from leaving China.  In fact, Conspirators caused at least one container of Orbit goods to be detained in China, forcing Orbit to post a bond to gain the release of the container, after a delay of several weeks.

*Infringement*

63.     On information and belief, over the course of the parties' relationship, and now with increasing regularity, Defendants have and continue to make, sell and/or offer for sale or allow others to make, use, sell and/or offer for sale products that infringe on Orbit's patents, trademarks and trade dress.

**FIRST CLAIM FOR RELIEF**
**PATENT INFRINGEMENT – 35 U.S.C. § 271**

**(Luo Jun, Janice Capener, Dan Capener, Sunhills, Rong Peng and John Does 1 - 10 -**
**Damages and Injunctive Relief)**
**(Hongchen – Injunctive Relief Only)**

64.     Orbit realleges and incorporates by this reference the preceding paragraphs of the

Complaint as if fully set forth herein.

65.     On April 5, 2005, the '696 Patent was duly and legally issued to the assignee,

Orbit.

66.     On September 16, 2003, the '570 Patent was duly and legally issued to the

assigned, Orbit.

67.     On August 29, 2009, the '546 Patent was duly and legally issued and is now

owned by Orbit.

68.     On August, 24, 2004, the '026 Patent was duly and legally issued to the assignee,

Orbit.

69.     On April 11, 2000, the '682 Patent was duly and legally issued to the assignee,

Orbit.

70.     On October 20, 1998, the '916 Patent was duly and legally issued.

71.     Orbit is the exclusive licensee of the '916 Patent.

72.     In order to mislead Orbit customers and lead them to believe Defendants were in

fact Orbit, Defendants frequently provided Orbit customers with photographs of Orbit products,

samples of Orbit products and made claims that Defendants could provide these Orbit products

to Orbit customers.

73.     By offering to sell Orbit's own products to Orbit customers, Defendants have infringed on Orbit's rights in the '696 Patent, the '570 Patent, the '546 Patent, the '026 Patent, the '682 Patent and the '916 Patent, (the "Patents").

74.     Defendants are liable for infringement of the Patents pursuant to 35 U.S.C. § 271.

75.     Defendants' acts of infringement have caused damage to Orbit, and Orbit is entitled to recover from Defendants the damages sustained by Orbit as a result of their  wrongful acts in an amount subject to proof at trial.

76.     As a consequence of the infringement complained of herein, Orbit has been irreparably damaged to an extent not yet determined and will continue to be irreparably damaged by such acts in the future unless Defendants are enjoined by this Court from committing further acts of infringement.

77.     Upon information and belief, one or more of Defendants' acts of infringement were made or will be made with knowledge of the Patents.  Such acts constitute willful infringement and make this case exceptional pursuant to 35 U.S.C. §§ 284 and 285 and entitle Orbit to enhanced damages and reasonable attorneys' fees.

**SECOND CLAIM FOR RELIEF**
**TRADEMARK INFRINGEMENT – 15 U.S.C. § 1114**

**(Luo Jun, Janice Capener, Dan Capener, Sunhills, Rong Peng and John Does 1 - 10  –**
**Damages and Injunctive Relief)**
**(Hongchen – Injunctive Relief Only)**

78.     Orbit realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein

79.     Upon information and belief Defendants have presented products bearing the name ORBIT and its logo, which rights are federally registered by Orbit with U.S. Trademark Reg. Nos. 2,568,783 and 2,819,521.  In doing so, Defendants have informed consumers that products bearing the ORBIT trademark are products manufactured by Defendants, when in fact they were not.

80.     Upon information and belief, Defendants have also used the trademark HARD TOP in connection with promoting and selling sprinkler and irrigation products.  HARD TOP is Orbit's federally registered mark, namely U.S. Trademark Reg. No. 2,575,043.

81.     Upon information and belief, Defendants have also used the trademark COBRA MISTAND in connection with promoting and selling sprinkler and irrigation products.  COBRA MISTAND is Orbit's federally registered mark, namely U.S. Trademark Reg. No. 2,218,418.

82.     Upon information and belief, Defendants have also used the trademark FLEX COBRA in connection with promoting and selling sprinkler and irrigation products.  FLEX COBRA is Orbit's federally registered mark, namely U.S. Trademark Reg. No. 4,078,877.

83.     Upon information and belief, Defendants have also used the trademark SUNMATE in connection with promoting and selling sprinkler and irrigation products.  SUNMATE is Orbit's federally registered mark, namely U.S. Trademark Reg. No. 2,389,054.

84.     Collectively, the trademarks ORBIT, HARD TOP, COBRA MISTAND, FLEX COBRA and SUNMATE shall be referred to as Orbit's Trademarks.

85.     Additionally, the goods sold by Defendants in connection with Orbit's Trademarks are closely related and/or identical to and sold and marketed through the same

channels and to the same consumers as the goods sold by Orbit in connection with its federally registered marks.

86.     Accordingly, the Defendants' use of Orbit's Trademarks in connection with sprinkler and irrigation products is likely to cause confusion, or cause mistake, or to deceive consumers in light of Orbit's federally registered marks.

87.     Upon information and belief, the Defendants use of Orbit's Trademarks in connection with its sprinkler and irrigation products has infringed Orbit's rights pursuant to the Lanham Act, 15 U.S.C. § 1114 and under the common law.

88.     Upon information and belief, Orbit has suffered actual damages as a result of Defendants' trademark infringement in an amount to be proven at trial.  Additionally, the harm to Orbit arising from Defendants' acts is not fully compensable by money damages.  Orbit has suffered, and continues to suffer, irreparable harm that has no adequate remedy at law and that will continue unless Defendants' conduct is preliminarily and permanently enjoined.

89.     Upon information and belief, Defendants' continued use of a confusingly similar trademark is reckless.  As a result, Orbit is further entitled to treble damages and an award of costs and attorneys' fees.

### THIRD CLAIM FOR RELIEF
### TRADEMARK AND TRADE DRESS INFRINGEMENT – 15 U.S.C. § 1125

**(Luo Jun, Janice Capener, Dan Capener, Sunhills, Rong Peng and John Does 1 - 10)**
**(Hongchen – Injunctive Relief Only)**

90.     Orbit realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

91.     Upon information and belief, the use of Orbit's Trademarks by Defendants in connection with their sprinkler and irrigation products as well as Defendants marketing and sale is similar to the Orbit's own use of its trademarks.

92.     In addition, Orbit has sold sprinkler and irrigation products which have a distinctive look and feel which consumers and customers of Orbit have come to associate with Orbit. Orbit has further used distinctive brands, logos and packaging in connection with its sales of sprinkler and irrigation products. Orbit has also used distinctive coloring and a distinctive presentation of products in catalogs and trade magazines or the internet and in stores. Such distinctive trademarks and trade dress (hereinafter "Orbit Trademarks and Trade Dress") are rights belonging to Orbit and rights which have been wrongfully misappropriated by Defendants.

93.     Defendants have promoted, sold and offered to sell Orbit designed products as their own and as the result of what they promoted to customers as their own innovations.

94.     In doing so Defendants frequently provided Orbit customers with actual Orbit products or photographs of Orbit products in an effort to persuade customers that Defendants had manufactured these products and provided them to Orbit when in fact they had not. In doing so Defendants wrongfully used Orbit Patents and Orbit Trademarks and Trade Dress as part of their scheme to promote themselves and their products to Orbit customers.

95.     Defendants have also presented products not sold by Orbit and promoted and claimed that such products were products Defendants had previously and/or are currently selling to Orbit. These claims were false and misleading.

96.     In their advertising, promotional, and sales calls, Defendants also claimed that they were the innovators of the products offered, that Orbit acts as its middle man, and that Defendants manufacture most of Orbit's products.

97.     These claims are literally false and/or misleading as they misrepresent the nature, characteristics, and/or qualities of Obit's products and commercial activities and Defendants' products and commercial activities.

98.     Defendants thus attempted to pass off Orbit products as their own and further pass off products which were not manufactured for Orbit as in fact being products that Defendants had manufactured and sold to Orbit.

99.     Defendants' false and/or misleading representations of fact are made in interstate commerce.

100.    Defendants' misrepresentations regarding their relationship with Orbit and their role in producing Orbit brand sprinkler irrigation products are material in that consumers rely on these misrepresentations when making purchasing decisions.

101.    As a result of Defendants' actions in commercial advertising and promotion, there is actual deception or at least a tendency to deceive a substantial portion of the intended audience.

102.    As a result of Defendants' actions Orbit has been forced to lower its prices to its customers and otherwise take steps to protect its market share.

103.    Defendants' actions have also caused injury and a loss in goodwill to Orbit.

104.    The sprinkler and irrigation goods sold by Defendants are marketed through the same channels and to the same consumers as the goods sold by Orbit in connection with Orbit Trademarks and Trade Dress.

105.    Accordingly, the use by Defendants of Orbit's Patents, Trademarks and Trade Dress in connection with sprinkler and irrigation products is likely to cause confusion, or cause mistake, or to deceive consumers in light of Orbit's pre-existing rights.

106.    Upon information and belief, the use of the Orbit's Patents, Trademarks and Trade Dress by Defendants in connection with their sprinkler and irrigation products has infringed Orbit's rights pursuant to the Lanham Act, 15 U.S.C. § 1125 and under the common law.

107.    On information and belief, Defendants' actions are reckless.

108.    Defendants' false and/or misleading advertising has caused Orbit actual damages in an amount to be proven at trial.  Such damages should be trebled as allowed by 15 U.S.C. § 1117(a).

109.    Orbit is further entitled to recover Defendants' profits, the amount of which is currently unknown by Orbit, and which amount should be trebled as allowed by 15 U.S.C. § 1117(a).

110.    This is an exceptional case pursuant to 15 U.S.C. §1117(a), and Orbit is therefore entitled to recover its attorney fees from Defendants.

111.    Pursuant to 15 U.S.C. § 1117(a), Orbit is also entitled to recover its costs of suit.

112.    Orbit is being irreparably harmed by Defendants' false and/or misleading advertising and Orbit has no adequate remedy at law.  Orbit is therefore entitled to preliminary

and permanent injunctive relief barring Defendants from engaging in further acts violative of 15

U.S.C. § 1125(a).

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF TRUTH IN ADVERTISING – UTAH CODE § 13-11A-3**

**(Luo Jun, Janice Capener, Dan Capener, Sunhills, Rong Peng and John Does 1 - 10)**

113.    Orbit realleges and incorporates by this reference the preceding paragraphs of the

Complaint as if fully set forth herein.

114.    As noted above, Defendants have passed off sprinkler and irrigation products

manufactured by Orbit and made misleading statements to Orbit customers, causing those

customers to believe Defendants manufactured these products for Orbit.

115.    Defendants have also passed off goods manufactured for themselves or others, as

Orbit goods, causing Orbit customers to believe Defendants manufactured these products for

Orbit.

116.    In doing so and in other acts complained of in this complaint, Defendants have

claimed that their goods have sponsorship, approval and characteristics which they did not have.

117.    As noted above, Defendants have also disparaged Orbit and disparaged Orbit's

goods and services by making false or misleading statements of fact.

118.    On information and belief, Defendants' actions are reckless.

119.    Defendants' advertising and promotional activities have caused Orbit actual

damages in an amount to be proven at trial.

120.    Pursuant to Utah Code § 13-11a-4(c), Orbit is also entitled to recover its costs of

suit and attorneys' fees.

**FIFTH CLAIM FOR RELIEF**
**UNFAIR COMPETITION, UTAH CODE ANN. §§13-5A-102, 103 AND UTAH**
**COMMON LAW**

**(Luo Jun, Janice Capener, Dan Capener, Sunhills, Rong Peng and John Does 1 - 10)**

121.    Orbit realleges and incorporates by this reference the preceding paragraphs of the

Complaint as if fully set forth herein

122.    As described in detail above, Defendants have engaged in passing off.

123.    Defendants have also attempted to misappropriate Orbit's goodwill and Orbit's

rights in its Patented products, Orbit's Trademarks and Trade Dress.

124.    Orbit has suffered actual damages as a result of unfair business practices by

Defendants in an amount to be proven at trial.  Additionally, the harm to Orbit arising from these

acts by Defendants is not fully compensable by money damages.  Orbit has suffered, and

continues to suffer irreparable harm that has no adequate remedy at law and that will continue

unless this unfair conduct by Defendants is preliminarily and permanently enjoined.

Furthermore, Orbit is entitled to its attorneys' fees and costs.

**SIXTH CLAIM FOR RELIEF**
**CONSPIRACY**

**(Luo Jun, Janice Capener, Dan Capener, Sunhills, Rong Peng and John Does 1 - 10)**

125.    Orbit realleges and incorporates by this reference the preceding paragraphs of the

Complaint as if fully set forth herein.

126.    Defendants recklessly and knowingly joined and agreed to a plan to

misappropriate and infringe Orbit's Patents, and Orbit's Trademarks and Trade Dress, engage in

false advertising and passing off and otherwise unfairly compete against Orbit.

127.     Defendants combined with each other and the Conspirators to make the misrepresentations and omissions described in this Complaint.

128.     Each of the misrepresentations and omissions described herein and the transactions which led to them were overt acts undertaken in furtherance of these conspiracies.

129.     As a direct result, Orbit has been damaged in an amount to be proven at trial.

130.     Based on Defendants' intentional and malicious conduct, Orbit also is entitled to recover punitive damages from Defendants.

### SEVENTH CLAIM FOR RELIEF
### MISAPPROPRIATION OF TRADE SECRET

**(Hongchen, Dongfang, Luo Jun and John Does 1 - 10 – Injunctive Relief Only)**

131.     During her employment with Orbit, Janice Capener was given access to strategic information, trade secrets, names and contacts of Orbit's suppliers, raw material providers, manufacturers, customers, and contacts.

132.     While working in management at Orbit's factory in Ningbo China, Janice Capener had unlimited access to proprietary information relating to that factory, including the exact labor and material costs of Orbit's products, including profit margins, costs of manufacture and overhead.

133.     Janice Capener also had access to information stored on Orbit's intranet, which required the use of a password to gain access to such information.

134.     Janice Capener also had access to other financial databases including databases which Orbit refers to as its "Customer Master" database, its "Product Master" database and its "ABCD Sales" database.  Access to these files was limited to those employees given appropriate passwords.  Those employees with access to this information knew that the information was only

to be used for purposes of Orbit's business and that this data could not be used for any other purpose.

135.     On May 13, 2009, from her office in China, Janice Capener, unbeknownst to Orbit and without Orbit's authorization, intentionally and secretly downloaded highly confidential financial information and trade secrets from Orbit's computer database in Utah.

136.     Among other things, Orbit is informed and believes that Janice Capener downloaded from Orbit's intranet Level 1 financial data relating to most, if not all, of Orbit's top 25 customers.  Janice Capener also downloaded selected entries from the Customer Master, Product Master and ABCD Sales Report databases.

137.     On information and belief, Capener provided this trade secret data to Luo Jun, Hongchen and Dongfang.  By virtue of its contractual relationship with Orbit, Dongfang also possessed trade secret information belonging to Orbit.  Orbit is informed and believes that Dongfang also provided its information to Luo Jun, Hongchen and Janice Capener and that this information was also improperly utilized by Hongchen, Luo Jun and Janice Capener.

138.     The information misappropriated by Janice Capener, Luo Jun, Hongchen and Dongfang includes the names, addresses, phone numbers and other detailed information for Orbit's customers; the identification of the factory that manufactured each of the products sold by Orbit; Orbit's manufacturing costs; Orbit's sales prices to retailers in the United States; Orbit's identification of its best-selling products; and data which could be used to calculate Orbit's profit margins.

139.     Janice Capener's theft of Orbit's trade secret data and confidential information from Orbit's computers was confirmed when Janice Capener produced the downloaded

information on or about July 15, 2011, in the course of discovery in related litigation before the Second District Court for the State of Utah.

140.    Orbit, on information and belief, alleges that Janice Capener has also misappropriated other trade secrets from Orbit.

141.    On information and belief, Janice Capener has provided Orbit's trade secrets to Luo Jun, Hongchen and Dongfang and these parties, in combination, have used this data to Orbit's detriment.

142.    In addition to the trade secrets information misappropriated by Janice Capener, Hongchen was also in possession of confidential Orbit data, including information regarding new products Orbit intended to place in the market, pricing data and other information Dongfang had agreed to keep confidential and information Dongfang had a duty to keep confidential.

143.    On information and belief, Dongfang provided this confidential and trade secret information to Luo Jun, Hongchen and Janice Capener and these parties, in combination, have used this data to Orbit's detriment.

144.    The information described above, including Orbit's designs and technical data, customer lists and data, and financial information acquired by Luo Jun, Dongfang and Hongchen is proprietary and confidential and constitute trade secrets under the Utah Uniform Trade Secrets Act, Utah Code Ann. § 13-24-1 (2010) ("Proprietary Information").

145.    The Proprietary Information is known only to Orbit and certain of its authorized employees and agents, and is not generally known to or ascertainable by the public.  The information thereby derives independent economic value.

146.     Orbit engages in extensive efforts to keep the Proprietary Information secret, including restricting disclosure of such Proprietary Information only to those employees and agents who have a specific need to know such information.

147.     Orbit is informed and believes, and on that basis alleges that, by their actions described herein, Luo Jun, Hong Chen and Dongfang have willfully and maliciously misappropriated and continue to misappropriate Proprietary Information of Orbit by improper means.

148.     Orbit is being irreparably harmed by the misappropriation of Orbit's Proprietary Information, and has no adequate remedy at law.  Orbit is therefore entitled to injunctive relief barring Hong Chen, Luo Jun, or Dongfang from misappropriating Orbit's Proprietary Information.

**EIGHTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT, TORTIOUS INTERFERENCE AND DEFAMATION**
**(Hongchen, Dongfang, Luo Jun and John Does 1 - 10 – Injunctive Relief Only)**

149.     Commencing in 2007, and without Orbit's knowledge and in purposeful violation of Orbit's rights, Hongchen, Dongfang and Luo Jun took Orbit designs, technical data and physical products and applied for and were granted patents in China on Orbit products and designs.

150.     In applying for these patents, Hongchen, Luo Jun and Dong Fang misrepresented themselves as the inventors and creators of these products, when in fact Orbit employees were the inventors.  Honchen, Luo Jun and Dong Fang also failed to disclose prior art, including Orbit's own prior use, testing, sales and offers to sell these products and slight variations of these products both in the United States and in China.

151.     Thereafter, in wrongful violation of Orbit's rights, Hongchen, Dongfang and Luo Jun have also attempted to prevent Orbit products from leaving China claiming infringement of these patent rights.

152.     These actions were taken, in part, to gain business at Orbit's expense and to convince Orbit customers in the United States that Dong Fang, Hongchen and Luo Jun were the inventors and creators of products which in fact Orbit had created.

153.     These actions were undertaken for improper purposes and by using improper means.

154.     In documents partially settling claims against Hongchen and Luo Jun, Orbit has reacquired ownership of these patents.

155.     Orbit is informed and believes that these actions were part of the conspiracy described above and were undertaken for the purpose of damaging Orbit's reputation in the United States so that it would appear that Dongfang, Hongchen, Luo Jun were the innovators and originators of Orbit products and that Orbit was merely a copycat.

156.     Hongchen, Dongfang, and Luo Jun have defamed Orbit and have been unjustly enriched to Orbit's detriment.

157.     By their conduct Hongchen, Luo Jun and Dongfang have thus damaged and misappropriated the business reputation and goodwill of Orbit over the years and have thereby been unjustly enriched.

158.     Orbit has been damaged by these actions.

159.     Orbit is entitled to injunctive relief to prevent further harm to its reputation.

## PRAYER FOR RELIEF

WHEREFORE, Orbit respectfully prays for the following relief:

1.      Judgment that Defendants have each infringed the '696 Patent, the '570 Patent, the '546 Patent, the '026 Patent, the '682 Patent and the '916 Patent.

2.      Injunctive relief against Defendants precluding them from infringing '696 Patent, the '570 Patent, the '546 Patent, the '026 Patent, the '682 Patent and the '916 Patent.

3.      An order requiring Sunhills, Luo Jun, Janice Capener, Dan Capener, Rong Peng and Does 1-10 to account for and pay to Orbit all damages caused by their infringement of the 696 Patent, the '570 Patent, the '546 Patent, the '026 Patent, the '428 Patent and the '916 Patent, whether lost profits or a reasonable royalty, and to enhance such damages by three times in light of Defendants' willful infringement, all in accordance with 35 U.S.C. § 284.

4.      Judgment that Defendants' use of Orbit Trademarks and Trade Dress, or trademarks and trade dress confusingly similar thereto, is likely to cause confusion and will result in unfair competition under Federal and State law and injunctive relief precluding such use.

5.      Judgment against Luo Jun, Janice Capener, Dan Capener, Sunhills, Rong Peng and John Does 1-10 for false advertising, unfair competition, passing off and violation of Orbit's Federal and Utah statutory claims and Orbit's common law claims.

6.      Entry of a permanent injunction pursuant to 35 U.S.C. § 283 enjoining Defendants, their officers, agents, servants, employees and those persons in active concert or participation with them from further acts of patent infringement, trademark infringement, trade dress infringement, passing off, false advertising, unfair competition or other deceptive practices

27

and the entry of a permanent judgment enjoining Defendants and their officers, agents, servants, employees and those persons in active concert or participation with them from competing against Orbit or from engaging in any further acts violative of Federal and State law.

7.      An order finding that Orbit has been permanently and irreparably damaged by Dongfang, Hongchen, and Luo Jun's theft of Orbit's trade secrets, their unjust enrichment and defamation or Orbit and a finding that a permanent injunction enjoining Hongchen, Dongfang and Luo Jun from competing against Orbit in the United States in the sprinkler and irrigation markets is the only appropriate remedy for these harms.

8.      An order that Orbit be granted pre-judgment and post-judgment interest on the damages caused to it by reason of Defendants' patent infringement.

9.      A declaration by the Court that this is an exceptional case and that Orbit be granted its reasonable attorneys' fees in accordance with 35 U.S.C. § 285 and 15 U.S.C. §1117(a).

10.      A judgment for punitive damages, three times Orbit's actual damages, in an amount to be determined at trial.

11.      Judgment awarding Orbit the amount by which Defendants were unjustly enriched.

12.      For an order that Defendants promulgate advertising to correct and/or prevent any consumer confusion, false associations, or false representations they have created or made in the marketplace, and/or compensate Orbit for the advertising and other expenditures necessary to dispel any such consumer confusion, false associations, or false representations.

13.     For an order that Defendants cancel all pending orders for any products that were or are the subject of false and/or misleading advertising, including, without limitation, advertising that misrepresents the nature, quality, or characteristics of their products.

14.     For a declaration of the parties' respective rights as indicated above.

15.     An order awarding pre- and post-judgment interest.

16.     An award for Orbit's costs of suit, including reasonable expenses and attorneys' fees.

17.     Such other and further relief as contemplated by this Complaint and/or as the Court deems just and proper.

### JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Orbit demands a trial by jury of all issues so triable.

DATED this 20th day of March, 2013.

RAY QUINNEY & NEBEKER P.C.

By:/s/ Mark M. Bettilyon
Mark M. Bettilyon
Liesel B. Stevens

Greg S. Ericksen

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

On the 20th day of March, 2013, the foregoing **THIRD AMENDED COMPLAINT** was

filed electronically with the Clerk of the United States District, District of Utah Central Division,

using the CM/ECF system which sent notification of such filing to the following:

**Michael G. Brady**
BRADY LAW CHARTERED
St. Mary's Crossing
2537 W. State Street, Suite 200
Boise, ID 83702
bradylaw@bradylawoffice.com

**Frank J. Dykas**
DYKAS & SHAVER LLP
P. O. Box 877
Boise, ID 83701-0877
frank@dykaslaw.com

**Kenneth R. Shemin**
SHEMIN LAW FIRM, PLLC
3333 Pinnacle Hills Parkway, Suite 603
Rogers, AR 72758
ken@sheminlaw.com

Scott Bell
Parsons Behle & Latimer
201 S. Main, Suite 1800
Salt Lake City, UT  84111
sbell@parsonsbehle.com

Bruce Shapiro
Bruce H. Shapiro PC
145 South 400 East
Salt Lake City, UT  84111
bshapiro@shapiropclaw.com

/s/ Lori M. McGee

1207859

30