IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ORBIT IRRIGATION PRODUCTS, a Utah Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SUNHILLS INTERNATIONAL, a California limited liability company, et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br><br>Case No. 1:10-CV-113 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Sunhills Defendants' Motion for Partial Summary Judgment Regarding Lack of Standing, Limitations of Damages, and Sanctions (Docket No. 284); Sunhills Defendants' Motion for Partial Summary Judgment Regarding No Proof of Infringement and Damages (Docket No. 318); Plaintiff Orbit's Motion for Entry of Permanent Injunction Against Hongchen, Dongfang, and Luo Jun (Docket No. 248); and Plaintiff Orbit's Motion for Entry of Default Judgment (Docket No. 247).

Having considered the evidence and arguments presented by the parties, the Court will grant in part and deny in part Sunhills Defendants' Motion for Partial Summary Judgment Regarding Lack of Standing, Limitation of Damages, and Sanctions; deny Sunhills Defendants' Motion for Partial Summary Judgment Regarding No Proof of Infringement and Damages; grant Plaintiff Orbit's Motion for Entry of Permanent Injunction; and deny without prejudice Plaintiff Orbit's Motion for Entry of Default Judgment.

1

I.  BACKGROUND

Plaintiff Orbit Irrigation Products, Inc. ("Orbit") filed suit against Sunhills International, LLC on July 14, 2010. Since then, Orbit amended its Complaint two additional times. The operative complaint, known as the Third Amended Complaint, was filed on March 20, 2013.[1] In that Complaint, Orbit makes eight claims against Janice Capener, Dan Capener, Rong Peng, and Sunhills International, LLC (collectively known as "Sunhills Defendants"); and Luo Jun, Taizhou Dongfang Light Decorations, and Zhejiang Hongchen Irrigation Equipment (collectively known as "Hongchen Defendants").

The eight claims for relief are for: (1) patent infringement under 35 U.S.C. § 271; (2) trademark infringement under 15 U.S.C § 114; (3) trademark and trade dress infringement under 15 U.S.C. § 1125; (4) violation of truth in advertising under Utah Code Ann. § 13-11A-3; (5) unfair competition under Utah Code Ann. § 13-15a-102 and Utah common law; (6) conspiracy;[2] (7) misappropriation of trade secrets; and (8) unjust enrichment, tortious interference, and defamation.

Relevant to the summary judgment motions before the Court are the following patents: U.S. Patent No. D399,916 (the "'916 Patent") entitled "Misting Apparatus"; U.S. Patent No. 6,109,546 (the "'546 Patent") entitled "Lawn Sprinkler and bearing therefore"; U.S. Patent No. D422,682 (the "'682 Patent") entitled "Water Spray Gun Handle"; U.S. Patent No. D495,026 (the "'026 Patent") entitled "Hose Nozzle"; U.S. Patent No. 6,874,696 (the "'696 Patent")

---

[1] Docket No. 139.

[2] The parties stipulate that that there is no claim under the Patent act for "conspiracy to infringe" and have modified the language under the Sixth Claim for Relief accordingly. *See* Docket No. 317.

entitled "Adjustable Sprinkler Riser with Offset Joint"; and U.S. Patent No. 6,619,570 (the "'570 Patent") entitled "Telescoping Watering Wand."[3]

In its Third Amended Complaint, Orbit generally alleges Defendants conspired to infringe Orbit's patents, trademarks, and trade dress.[4] Defendant Janice Capener ("Ms. Capener") was a former employee of Orbit Irrigation Products, Inc. In November of 2009, Ms. Capener and Defendant Rong Peng, formed Sunhills International, LLC ("Sunhills International") to compete in the irrigation products industry.[5] In December of 2009, Ms. Capener hired Charles Crump ("Mr. Crump") as the Independent National Sales Representative for Sunhills International.[6] Between December 2009 and July 2010, Mr. Crump engaged in a sales and marketing campaign reaching out to both regional and national retailers such as Home Depot and Lowes.[7] A product catalog was created for Sunhills International. Mr. Crump used the catalog as well as pricing sheets as part of his sales efforts. Furthermore, Orbit alleges that actual Orbit products were used in sales presentations.[8] Ultimately, Sunhills International concluded one sale successfully to Home Depot's Your Other Warehouse Division. Sunhills Defendants claim Sunhills International ceased doing business by the end of July 2010.[9]

---

[3] Docket No. 139, at 6.

[4] *Id*. at 12.

[5] Docket No. 288 Ex. 3.

[6] *Id*.

[7] *Id*.

[8] Docket 139, at 9.

[9] Docket No. 318, at ix.

Orbit further alleges that Ms. Capener and Hongchen Defendants provided misleading impressions that they were the originators of Orbit products, trade dress, and inventive concepts to Orbit customers.[10]

Because of severe litigation misconduct, this Court granted Orbit's Motion for Terminating Sanctions Against the Hongchen Defendants on April 2, 2014.[11] The Court requested Orbit provide a proposed permanent injunction with legal support for review. Orbit has submitted a Motion for Permanent Injunction and Proposed Permanent Injunction and a Motion for Default Judgment against Hongchen Defendants.

Though litigation has ended as against the Hongchen Defendants pursuant to this Court's Order of Terminating Sanctions, Orbit and Sunhills Defendants continue through discovery. Sunhills Defendants filed two motions for partial summary judgment principally (1) challenging Orbit's rights to file suit under the '916, '546, and '682 Patents based on lack of standing and (2) claiming noninfringement on the '026 and '696 Patents.

## II.   DISCUSSION

A. SUNHILLS DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING LACK OF STANDING, LIMITATION OF DAMAGES, AND SANCTIONS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers

---

[10] Docket No. 139, at 13.

[11] Docket No. 237.

[12] Fed. R. Civ. P. 56(a).

to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[13] "Once the movant has made this showing, the burden shifts to the nonmovant to designate specific facts showing that there is a genuine issue for trial."[14]

In its Motion, Sunhills Defendants: (1) seek to dismiss Orbit's infringement claims under the '916, '546, and '682 Patents based on lack of standing; (2) alternatively request that if this Court does not dismiss Orbit's infringement claims, that damages be restricted to a reasonable royalty; and (3) seek dismissal of Orbit's entire First Claim for Relief for patent infringement as a sanction for litigation misconduct and an award for attorney fees and costs. Each issue will be addressed in turn.

    1. *Standing*

        a. The '916 Patent

Standing to file suit is a threshold requirement in every federal action.[15] "In order to assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent at *the inception of the lawsuit*."[16] The burden of establishing standing falls on the party bringing the action.[17]

---

[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

[14] *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).

[15] *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975 (Fed. Cir. 2005).

[16] *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003) (emphasis added).

[17] *Id.* at 1309.

Orbit initiated suit against Sunhills Defendants under the '916 Patent in the Original Complaint filed on July 10, 2010. While Orbit claimed an exclusive license of the '916 patent was "legally and duly issued," no written conveyance of such rights has been produced.[18] Rather, the only written conveyance of title to Orbit in the record is an assignment of ownership from Arizona Mist (the "'916 Assignment") filed and executed on July 25, 2012, nearly two years after the Original Complaint was filed.[19] Sunhills Defendants contend Orbit was not an exclusive licensee of the '916 Patent at the time it originally filed suit, and therefore lacks Article III constitutional standing and cannot cure this defect with joinder. The Court agrees.

In patent infringement cases, Article III constitutional standing is conferred under the Patent Act, which provides, "'A patentee shall have remedy by civil action for infringement of his patent.'"[20] "The term 'patentee' comprises 'not only the patentee to whom the patent was issued but also the successors in title to the patentee.'"[21] An assignee may be deemed the effective patentee under § 281 for purposes of holding constitutional standing if the patentee transfers "all substantial rights under the patent."[22] 35 U.S.C. § 261 requires that all patent assignments be in writing.

Orbit has not produced a licensing agreement from which the Court may recognize the existence of an exclusive license granting all or fewer than all substantial rights under the patent at the inception of the lawsuit. The only written assignment on record was executed after the

---

[18] Docket No. 1, at 8.

[19] Docket No. 297 Ex. 2.

[20] *Intellectual Prop. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001) (quoting 35 U.S.C. § 281).

[21] *Id*.

[22] *Sicom*, 427 F.3d at 976.

inception of the suit.  Without a prior written assignment, this Court cannot assess what rights, if any at all, were conferred.  Thus, the Court finds that, at the filing of the suit, Orbit held no enforceable rights in the '916 patent and did not have standing without joinder of the patentee, Arizona Mist.  Where a plaintiff holds "no enforceable rights whatsoever in the patent at the time it filed suit, [plaintiff] lacked cognizable injury necessary to assert standing under Article III of the constitution.  Such defect in standing cannot be cured after the inception of the lawsuit."[23]

Therefore, the Court will dismiss Orbit's claims related to the '916 Patent for lack of standing without prejudice to its refilling, if so desired.

### b.  The '546 Patent

Sunhills Defendants argue that Orbit lacks standing to file suit against the '546 patent because Orbit did not acquire rights to the '546 patent until five months after Sunhills ceased doing business.  Sunhills reasons that because "the right to sue for damages is limited to the damages sustained by the patent owner at the time of the patent infringement," Orbit is limited to the patent owner's damages at the time of infringement.[24]

Sunhills confuses the argument for lack of standing with the law regarding damages. Standing is determined at the inception of the suit.  It is undisputed by either party that Orbit was assigned ownership of the '546 patent on January 20, 2011.  Orbit initiated suit under the '546 patent on April 26, 2012 in its Second Amended Complaint, as it held title.  Therefore, Orbit has standing to sue under this patent.  Whether Orbit may recover damages is a separate matter.

---

[23] *Paradise Creations, Inc.,* 315 F.3d at 1310.

[24] Docket No. 284, at 7.

c. The '682 Patent

Sunhills requests this Court dismiss Orbit's claim of infringement on the '682 patent due to lack of standing, but makes no argument regarding standing. Rather, Sunhills states, "The issue here is again that Orbit is limited to receiving only damages suffered by the patent owner at the time of the alleged infringement."[25] The issue of damages will be addressed separately below and has no bearing on the question of standing.

It is undisputed by either party that Orbit was assigned ownership of the '682 patent on July 25, 2012. Orbit initiated suit under the '682 patent in its Third Amended Complaint on March 20, 2013. Therefore, Orbit has standing to sue under this patent.

*2. Damages*

Under 35 U.S.C. § 284, the Court shall award the winning claimant damages "adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."[26] Adequate damages can include lost profits due to diverted sales, price erosion, and increased expenditures caused by infringement.[27] However, the Federal Circuit has recognized that patentees may be entitled to damages above a reasonable royalty "on theories entirely distinct from lost profits."[28]

Sunhills Defendants assert, and Orbit agrees, that Orbit is only entitled to recover the damages incurred by the true owner of the three patents at the time of any alleged patent

---

[25] Docket No. 284, at 9.

[26] 35 U.S.C. § 284.

[27] *Minco, Inc. v. Combustion Eng'g., Inc.*, 95 F.3d 1109, 1118 (Fed. Cir. 1996).

[28] *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1366 (Fed. Cir. 2008).

---

infringement. Sunhills Defendants request that the Court limit any proven damages to a reasonable royalty.

However, "[t]he language of the statute is expansive rather than limiting. It affirmatively states that damages must be adequate, while providing only a lower limit and no other limitation."[29] "The adequacy of the damages measure depends on the circumstances of each case."[30] The parties appear to agree that Orbit is entitled to some measure of damages. Orbit will be given an opportunity to prove what damages may be owed. The Court will deny a limitation to a reasonable royalty.

*3. Sanctions*

Under 35 U.S.C. § 285, "The court in exceptional cases may award reasonable attorney fees to the prevailing party."[31] The Supreme Court has stated that an "'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."[32] "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion considering the totality of the circumstances."[33]

Sunhills Defendants allege that Orbit "failed to make an adequate pre-filing investigation, sued for infringement of patents Orbit did not own, sued for infringement of patents that Orbit

---

[29] *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995).

[30] *Id.* at 1546.

[31] 35 U.S.C. § 285.

[32] *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 134 S. Ct. 1749, 1756 (2014).

[33] *Id.*

did not own at the time of the alleged infringements, and attempted to conceal the lack of ownership by giving deceptive responses to discovery and by willfully fabricating deceptive, undated Assignments."[34] Sunhills Defendants seek dismissal of Orbit's First Claim for Relief for Patent Infringement and an award of attorney fees and costs under the Court's inherent ability to sanction and under § 285.

The Court declines to dismiss Orbit's first claim for relief as a sanction for alleged litigation misconduct.  Because litigation is ongoing, the Court will postpone its ruling on sanctions and an award of attorney fees until all matters have resolved.  Accordingly, this portion of the Motion will be denied without prejudice to its refilling at the conclusion of this case, if appropriate.

Therefore, the Court will grant in part and deny in part Sunhills Defendants' Motion for Partial Summary Judgment Regarding Lack of Standing, Limitation of Damages, and Sanctions.

B. SUNHILLS DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING NONINFRINGEMENT AND DAMAGES

In its Motion, Sunhills Defendants challenge Orbit's allegation of infringement of its '026 and '696 Patents.  Under 35 U.S.C. § 271, infringement occurs when "whoever without authority . . . offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent."[35]  Sunhills Defendants first claim Orbit cannot demonstrate that Sunhills' products infringe Orbit's products.  Secondly, Sunhills Defendants argue that Orbit cannot demonstrate that an offer for sale was made.

---

[34] Docket No. 284, at 10.

[35] 35 U.S.C. § 271.

Additionally, Sunhills Defendants request the Court "hold as matter of law that Orbit has failed to prove any recoverable damages for any infringement of the '570 Patent as may be proven, and to limit Orbit's recoverable damages for any proven infringement to a reasonably royalty."[36] As set forth above, Sunhills Defendants' damages argument is premature and Orbit will be given the opportunity to present its case. The Court will deny this part of Sunhills Defendants' Motion.

*1. The '026 Patent*

The '026 Patent, entitled "Hose Nozzle," is a design patent. The test for design patent infringement is called the "ordinary observer test." This test asks whether, "[I]n the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same[.] [I]f the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."[37]

Here, Orbit's expert witness, Robert Rapp ("Mr. Rapp"), compared the '026 patent with Sunhills' Product No. 20022 in Sunhills International's product catalog. He further provided testimony cross referencing Product No. 20022 in pricing sheets offered to potential customers. Mr. Rapp's conclusion is that the design of the '026 Patent and Product No. 20022 "each include at least the ornamental features identified at reference numerals 1 and 2" and that "reference numeral 3 identifies an alternating pattern of the features of reference numerals 1 and 2."[38]

---

[36] Docket No. 318, at vi.

[37] *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (quoting *Gorham Co. v. White*, 81 U.S. 511, 528 (1971)).

[38] Docket No. 324 Ex. 10, at 4.

Thus, a side by side comparison of the '026 Patent and an image of Product No. 20022 may lead an ordinary observer to conclude that the two designs are substantially the same. Therefore, Orbit provides evidence from which a reasonable fact-finder could find infringement under the ordinary observer test.

Sunhills Defendants also assert it "never offered to sell, or actually sold, any nozzles having anything similar to the patented design."[39] Under the Patent Act, an offer for sale is analyzed "according to the norms of traditional contractual analysis."[40] An offer for sale is made where there is a "description of the allegedly infringing merchandise and the price at which it can be purchased."[41] Here, Orbit provides evidence of a "Formal Quote for Watering/Hose End Product Lines" sent by Charlie Crump, Sunhills' Director of Sales, to a customer on May 13, 2010.[42] The email included an attached price quote for the "Mini Fire Hose Nozzle Alum Core."[43] This item was identified by Mr. Rapp as Sunhills Product No. 20022, which he concluded infringed the '026 Patent under the ordinary observer test.[44] The "Formal Quote," together with a description of the alleged infringing merchandise and the price at which it can be purchased may, in fact, constitute an offer for sale. Thus, Orbit has met its burden in establishing material issues precluding summary judgment on the '026 Patent.

---

[39] Docket No. 318, at 2.

[40] *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1254–1255 (Fed. Cir. 2000).

[41] *3D Sys., Inc. v. Arotech Labs., Inc*., 160 F.3d 1373, 1379 (Fed. Cir. 1998).

[42] Docket No. 324 Ex. 14.

[43] Docket No. 324 Ex. 15.

[44] Docket No. 324 Ex. 10.

2. *The '696 Patent*

The '696 Patent, entitled "Adjustable Sprinkler Riser with Offset Joint," is a utility patent. "A determination of infringement requires a two-step analysis."[45] First, the Court determines the scope and meaning of the patent claims asserted . . . . [Second,] the properly construed claims are compared to the allegedly infringing device."[46] "On summary judgment, the issue is whether there is no genuine issue of material fact regarding infringement."[47]

Sunhills Defendants assert that the images of adjustable risers in its product catalog "are too small to ascertain the connection details and only display an assembled riser."[48] However, Orbit provides expert testimony concluding that "[Sunhills] Product Numbers 10077 and 10093 and any products not more than colorably different from these products" shown in Sunhills' product catalog and pricing sheets fall within the scope of "at least claims 1-2 and 5-6 of the ['696 Patent]."[49] Further, "[a]dditional claims of the ['696 Patent][50] may be infringed based on further discovery."[51]

Moreover, Orbit provides evidence suggesting that Sunhills Defendants offered to sell Orbit's own products, which necessarily infringe on Orbit's patents. Sunhills Defendants admit that "[a] sample of the actual patented Orbit adjustable riser . . . was found . . . in one of the two

---

[45] *In re Gabapentin Patent Litig.*, 503 F.3d 1254, 1259 (Fed. Cir. 2007).

[46] *Id.*

[47] *Id.*

[48] Docket 318, at 3.

[49] Docket No. 324 Ex. 8a.

[50] The expert report originally states "'969 Patent." A typo is assumed because the '696 Patent is the subject of the paragraph and a "'969 Patent" has not yet been referenced in this case.

[51] Docket No. 324 Ex. 8a.

suitcases of sample products turned over to Orbit by [Mr.] Crump."[52]  Additionally, Orbit provides evidence demonstrating that images of Orbit's products were used in Sunhills International's product catalog and sales presentations.  Specifically, when a mouse is hovered over the photograph of the "adjustable shrub riser" in an electronic copy of promotional materials sent to Home Depot by Sunhills Defendants, the image is identified as "Orbitshrubriser.jpg."[53]

Sunhills Defendants alternatively argue that even if actual Orbit product was used as sample products and that Orbit product was shown in Sunhills International's product catalog and price sheets, these facts combined do not equate to an infringing offer for sale.  Sunhills Defendants suggest that even though "samples shown to potential customers were of actual Orbit products, the offers were always for something like the Orbit product, only better."[54]  However, Sunhills Defendants cannot point to any evidence that prospective buyers were aware that they would be receiving a non-infringing product or that Sunhills International planned to manufacture a product that did not infringe Orbit's patents.  Conversely, Orbit argues, Sunhills Defendants' sales efforts were largely bait and switch tactics and points to evidence that may support this argument.  Thus, Orbit has met its burden in demonstrating that material issues exist for trial, precluding summary judgment on the '696 Patent.

Accordingly, the Court will deny Sunhills Defendants' Motion for Partial Summary Judgment Regarding No Proof of Infringement and Damages.

---

[52] Docket No. 318, at 7.

[53] Docket No. 324 Ex. 6.

[54] Docket No. 317, at 7–8.

C. ORBIT'S MOTION FOR PERMANENT INJUNCTION

Pursuant to the Court's instruction in its Order Granting Terminating Sanctions against the Hongchen Defendants on April 2, 2014,[55] Orbit has submitted a Proposed Permanent Injunction for the Court's review. Because the Court has struck the Hongchen Defendants' Answer, allegations in the Third Amended Complaint against Hongchen Defendants are deemed admitted and the Court's analysis will rely on the facts contained therein.[56]

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, the balance favors the plaintiff and an equitable remedy is warranted; and (4) the public interest would not be disserved by a permanent injunction.[57]

*1. Irreparable Injury*

"[A] plaintiff satisfies the irreparable harm requirement by demonstrating 'a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages.'"[58] In the patent infringement context, courts consider "both past and future harm to market share, revenues, and brand recognition to determine whether the patentee in an infringement action has suffered an irreparable injury warranting injunctive relief."[59]

Here, Orbit suffered irreparable harm by the Hongchen Defendants' sales and offers to sell Orbit's patented products. The Hongchen Defendants provided misleading impressions that

---

[55] Docket No. 237.

[56] Fed. R. Civ. P. 8(b)(6); *see Nishimatsu Const. Co., Ltd. v. Houston Nat'l. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

[57] *Ebay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

[58] *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009).

[59] *K-Tec v. Vita-Mix*, 765 F. Supp. 2d 1304, 1318 (D. Utah 2011).

15

they were the originators of Orbit products, trade dress, and inventive concepts to Orbit customers.[60] Using samples of Orbit product, the Hongchen Defendants represented those samples as their own in catalogs and sales presentations to solicit sales. Such acts dilute Orbit's brand recognition and harm market share and revenue.

In the trademark infringement context, "infringement alone can constitute irreparable injury and . . . the movant is not required to show that it lost sales."[61] The primary consideration in trademark infringement is "whether the public is likely to be confused by the similarity of the marks."[62] "Once a plaintiff has demonstrated a likelihood of confusion, irreparable injury is presumed."[63] Orbit has demonstrated a likelihood of confusion where Hongchen has willfully misrepresented Orbit products to customers as its own.

Moreover, the Court also has authority to order injunctive relief when a trade secret has been misappropriated under the Utah Uniform Trade Secrets Act.[64] The Hongchen Defendants have misappropriated Orbit's patent rights, its trademark, and trade dress rights, and have pled guilty to criminal charges associated with the theft of Orbit's trade secrets.[65]

The Hongchen Defendants argue that Orbit cannot establish its entitlement to a permanent injunction because it must prove it has suffered irreparable injury. Because the Court deems the allegations against the Hongchen Defendants within Orbit's Third Amended

---

[60] Docket No. 139, at 13.

[61] *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).

[62] *Marker Int'l.v. deBruler*, 635 F.Supp. 986, 998 (D. Utah 1986).

[63] *Id*.

[64] Utah Code Ann. §§ 13-24-1 to -9 (2005).

[65] Docket No. 139; Docket No. 248, at 6–7.

Complaint as admitted, those facts demonstrate that Orbit has suffered irreparable harm such that cannot be compensated by monetary damages.

2.  *Inadequate Remedy at Law*

The Hongchen Defendants' egregious misconduct has demonstrated that monetary sanctions will be inadequate to compensate Orbit for harm caused by its infringement. In fact, this Court has already noted in its Order Granting Terminating Sanctions that "no sanction will bring about the Hongchen Defendants' compliance."[66] Thus, this factor weighs in favor of granting a permanent injunction.

3.  *Balance of Hardship*

Requiring Orbit to compete against its own patented invention places a substantial hardship on Orbit.[67] Orbit suffers harm when its brand recognition and competitive market position has been injured due to Hongchen's misconduct. The Hongchen Defendants have not put forth any persuasive evidence that it would suffer harm if the Court issues an injunction. Accordingly, the balance of harms weighs in favor of granting a permanent injunction.

4.  *Public Interest*

"Courts recognize the 'strong public policy favoring enforcement of patent rights.'"[68] "Public interest usually favors the patentee, with rare exceptions necessary to protect public health, national security or other critical public interests."[69] These exceptions do not apply in

---

[66] Docket No. 237, at 13.

[67] *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2013).

[68] *K-Tec*, 765 F. Supp. at 1319 (quoting *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1998)).

[69] *Id.*

this case. Furthermore, Utah has a significant public interest in resolving disputes involving Utah's Uniform Trade Secrets Act.[70] Therefore, the public interest in protecting patents, trademarks, and trade secrets weigh in favor of granting a permanent injunction.

Because the Court finds all four factors weigh in favor of granting a permanent injunction against Hongchen Defendants, the Court will grant Orbit's Motion. The injunction will be set out in a separate order.

D.  ORBIT'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

"Decisions to enter judgment by default are committed to the district court's sound discretion."[71] However, the Tenth Circuit has recognized that "[w]hen one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against him until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted."[72] "[J]ust as consistent verdict determinations are essential among joint tortfeasors, consistent damage awards on the same claim are essential among joint and several tortfeasors."[73]

Orbit argues that the relief it seeks against the Hongchen Defendants is injunctive rather than monetary, and therefore, the risk of inconsistent damage awards is not present. However, the risk of inconsistent verdict determinations is still present as Orbit's claims against all Defendants are so closely related. Thus, the Court will not enter default judgment at this time.

---

[70] *See* Utah Code Ann. § 13-24-1 *et seq.*

[71] *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1124 (quotation marks omitted).

[72] *Hunt v. Inter-globe Energy, Inc.*, 770 F.2d 145, 147 (10th Cir. 1985) (quotations omitted); *see also Frow v. De la Vega*, 82 U.S. 552 (1872).

[73] *Hunt*, 770 F.2d at 148.

## III. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that the Sunhills Defendants' Motion for Partial Summary Judgment Regarding Lack of Standing, Limitation of Damages, and Sanctions (Docket No. 284) is GRANTED IN PART AND DENIED IN PART. It is further

ORDERED that the Sunhills Defendants' Motion for Partial Summary Judgment Regarding No Proof of Infringement and Damages (Docket No. 318) is DENIED. It is further

ORDERED that the Plaintiff Orbit's Motion for Entry of a Permanent Injunction is GRANTED (Docket No. 248). It is further

ORDERED that the Plaintiff Orbit's Motion for Entry of Default Judgment (Docket No. 247) is DENIED without prejudice.

DATED this 25th day of March, 2015.

BY THE COURT:

_____
Ted Stewart
United States District Judge